## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| DAVID L. CARMELL, | ) | Bankruptcy No. 09 B 05547 |
| Debtor. | ) | |
| | ) | |
| NEW CENTURY BANK, N.A., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 09 A 00659 |
| | ) | |
| DAVID L. CARMELL, | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION ON DEBTOR'S MOTION TO DISMISS
### NEW CENTURY BANK'S FIRST AMENDED COMPLAINT (DOCKET NO. 21)

This proceeding relates to the Chapter 7 bankruptcy case filed by the Debtor, David L.

Carmell ("Carmell"). Plaintiff, New Century Bank, N.A. ("NCB") filed its Amended Adversary

Complaint objecting to discharge and to dischargeability of Carmell's debt under sections

523(a)(2)(A), 523(a)(2)(B), 523(a)(6), 727(a)(3), 727(a)(4), 727(a)(5), and 727(a)(7) of the

Bankruptcy Code. Carmell has moved to dismiss the Amended Complaint pursuant to Rule

12(b)(6) Fed. R. Civ. P. and Rule 15(c) Fed. R. Civ. P., made applicable to this proceeding

through Rule 7012 Fed. R. Bankr. P. and Rule 7015 Fed. R. Bankr. P. ("Motion to Dismiss,"

Docket No. 21).

### INTRODUCTION

NCB's Original Complaint contained five counts objecting to discharge and to the

dischargeability of Carmell's debt to NCB under sections 523(a)(2)(B), 523(a)(4), 523(a)(6),

727(a)(3), and 727(a)(5) of the Bankruptcy Code. Carmell moved to dismiss the original

Complaint ("Original Complaint"), and NCB was granted leave to amend it. NCB filed its First

Amended Complaint Objecting to Dischargeability of Debt and to Discharge ("Amended

Complaint") on September 22, 2009. (Docket No. 18.)

PLEADINGS IN THE AMENDED COMPLAINT

In the Amended Complaint, NCB dropped former Count II, which objected to

dischargeability under § 523(a)(4). NCB also added three counts.

New Count I of the Amended Complaint is an objection to dischargeability under

§ 523(a)(2)(A). In that Count, NCB specifically alleges that "Carmell fraudulently represented in

Term Note A to New Century that 18 Leasing and Eagle American would be able to provide,

among other things, the Rolling Collateral as security for the loans." (Amended Complaint ¶ 34.)

NCB alleges that Carmell knowingly and intentionally failed to provide the Rolling Collateral to

NCB and knowingly and intentionally failed to disclose that he could not provide the collateral.

In new Count V, an objection to discharge under § 727(a)(4), NCB alleges that Carmell

knowing and fraudulently made a false oath that he did not submit financial documents to NCB

when he stated in an affidavit filed in this case that he was not involved in the preparation or

maintenance of financial records and did not prepare or submit documents to NCB.

In new Count VII, an objection to discharge under § 727(a)(7), NCB alleges that in the

involuntary Chapter 7 bankruptcy cases filed against 18 Leasing (Bankr. No. 09-16510) and

Eagle American (Bankr. No. 09-16519), Carmell concealed or failed to keep books and records

from which 18 Leasing and Eagle American's financial condition could be ascertained. NCB

further alleged that as an insider of 18 Leasing and Eagle American, Carmell has not complied

with an order to file schedules, statements, and other required documents.

2

The remaining counts in the Amended Complaint reallege counts pleaded in the Original

Complaint. Count II of the Amended Complaint realleges Count I of the Original Complaint,

objecting to dischargeability under § 523(a)(2)(B). Count III of the Amended Complaint realleges

NCB's objection to dischargeability under § 523(a)(6). Counts IV and VI reallege NCB's

objections to discharge under §727(a)(3) and §727(a)(5).

Allegations in NCB's Amended Complaint and Original Complaint are assumed to be

true for purposes of considering Carmell's Motion to Dismiss, all reasonable inferences being

drawn in favor of NCB. See Bane v. Ferguson, 890 F.2d 11, 13 (7th Cir. 1989).

### FACTUAL ALLEGATIONS IN AMENDED COMPLAINT

Carmell was the majority owner and a founding member of 18 Leasing, LLC ("18

Leasing") and Eagle American Logistics, LLC ("Eagle American"). Carmell was also the

President of Eagle Logistics Management, Inc. ("Eagle Logistics"). NCB alleges that 18 Leasing

and Eagle American were created by Carmell and his business partner Michael McAfee

("McAfee") to receive the assets and operations of United Transportation, LLC and United

Tractor Leasing, LLC (collectively "United"), trucking companies McAfee and Carmell operated

out of Atlanta, Georgia. Prior to March 2008, United borrowed over $2,000,000 from Associates

First Capital Corporation ("Associates First") to purchase at least 157 trucks for use in their

common carrier and truck leasing operations.

By March 2008, Associates First and United were deeply involved in litigation in

Johnson County, Georgia ("Georgia Litigation"). As part of the Georgia Litigation, United was

ordered to surrender to Associates First collateral consisting of 157 trucks used in United's

trucking business. On March 15, 2008, United was found in contempt of court in Johnson

3

County Superior Court for failing to deliver the collateral to Associates First. (Amended Complaint, Ex. B "Order Finding Defendants in Contempt of Court.") NCB alleges that United could not surrender possession of the trucks as ordered because its trucks were missing, inoperable, or seized by the State of Georgia due to United's failure to pay certain Georgia taxes. Associates First offered to settle the Georgia Litigation provided that United pay $1,850,000 to it. Carmell then solicited loans on behalf of 18 Leasing and Eagle American in an attempt to meet Associates First's settlement demand.

In April 2008, Carmell and McAfee formed Eagle Logistics, 18 Leasing, and Eagle American. Eagle Logistics is the managing member of both 18 Leasing and Eagle American. In April 2008, Carmell allegedly sent NCB various financial and other documents relating to United's business ("Financial Documents") including: (1) an "equipment appraisal;" (2) a "financial recap and explanation of 2007;" (3) a "bank packet with all pertinent financial information;" (4) information regarding the "lending entities" Eagle American and 18 Leasing; and (5) Carmell's personal financial information. (Amended Complaint Ex. C.)

On May 22, 2008, as part of a settlement agreement with United, Associates First agreed to release all security interests and other liens held on collateral, including any trucks held by Associates as collateral ("Rolling Collateral"), within fourteen days of receiving $185,000,000 ("Settlement Agreement"). (Original Complaint Ex. F; Amended Complaint Ex. D.) On May 23, 2008, 18 Leasing and Eagle American entered into a Credit Agreement with NCB ("Credit Agreement"). (Amended Complaint, Ex. E.) Carmell signed the Credit Agreement in his capacity as President of Eagle Logistics. Under terms of the Credit Agreement, 18 Leasing and Eagle American agreed to borrow $1,850,000 and to execute a promissory note in that same

4

amount ("Term Note A") payable to NCB. (Original Complaint Ex. D; Amended Complaint Ex. F.) Term Note A was "secured pursuant to [a] Security Agreement dated as of May 23, 2008." (Id. at ¶ 3.)  Pursuant to the Security Agreement dated May 23, 2008, Term Note A was secured by all 18 Leasing's and Eagle American's tangible and intangible personal property, which included the Rolling Collateral. (Amended Complaint Ex. G "Security Agreement.")  The Security Agreement provided that NCB's security interest included "All Equipment, vehicles, furniture and Fixtures." (Id. at ¶ (b)(iv).)  18 Leasing and Eagle American agreed to be jointly and severally liable for the $1,850,000.  On May 23, 2008, Carmell executed a Continuing Unconditional Guaranty in which Carmell agreed to be personally liable for the contractual obligations under the Credit Agreement and Term Note A in the event that 18 Leasing and/or Eagle American were unable to perform their contractual obligations. (Amended Complaint Ex. H.)

On May 23, 2008, in reliance on Financial Documents provided by Carmell, NCB agreed to disburse $1,850,000 to Associates First in order to settle the Georgia Litigation and to transfer the assets and operations of United to 18 Leasing and Eagle American.  NCB alleges that in soliciting the loans with NCB, Carmell knowingly and fraudulently failed to disclose to NCB that the Rolling Collateral was missing, inoperable, or subject to liens by the State of Georgia.

Associates First allegedly defaulted on the terms of the Settlement Agreement by failing to deliver title to the Rolling Collateral, thereby precluding 18 Leasing and Eagle American from taking possession of the Rolling Collateral.  According to NCB, Associates First's default was caused by the State of Georgia's refusal to release vehicle titles because of state tax liens against the vehicles resulting from United's unpaid taxes.  18 Leasing and Eagle American defaulted

5

under terms of the Credit Agreement and Term Loan Note A and have not repaid the amounts

due under the Credit Agreement and Term Loan Note A. Carmell has not repaid any amount due

under the Continuing Unconditional Guaranty.

NCB additionally alleges that in soliciting loans from NCB, Carmell submitted Financial

Documents containing fraudulent valuations of United and material omissions amounting to

fraud. At his Meeting of Creditors held under 11 U.S.C. § 341 on May 13, 2009, Carmell stated

that his son and wife notified NCB of fraud associated with 18 Leasing and Eagle American's

application to New Century Bank. (Amended Complaint Ex. I "Transcript of § 341 Meeting.")

NCB further alleges that during the § 341 Meeting and by affidavit, Carmell swore that McAfee

alone was responsible for the fraudulent Financial Documents submitted to NCB and that

Carmell did not possess or submit any financial information or statements to NCB. (Amended

Complaint Ex. J.) Carmell further stated under oath that much of the information and

documentation was provided to NCB after the loan was closed and proceeds were disbursed.

However, NCB pleaded that Carmell in fact was in possession of the Financial Documents and

was responsible for their submission to the bank approximately one month prior to the transfer of

the $1,850,000.

## PLEADINGS IN THE ORIGINAL COMPLAINT

NCB's Original Complaint contained five counts. In Count I, NCB sought a denial of

discharge of Carmell's debt to NCB pursuant to § 523(a)(2)(B). It alleged that financial

documents and a loan application submitted to NCB by Carmell contained materially false

information as to the financial condition of United, 18 Leasing, and Eagle American and material

omissions amounting to fraud. Specifically, NCB alleged that Carmell failed to disclose that the

6

companies had no potential operations and that all of the Rolling Collateral was either seized by

the State of Georgia, inoperable, or in disrepair.  NCB also alleged that it reasonably relied on

these documents in providing the loan.  In Count II, NCB alleged that Carmell breached his

fiduciary duties to NCB and sought a denial of discharge of Carmell's debt to NCB pursuant to

§ 523(a)(4).  In Count III, NCB sought a denial of discharge of Carmell's debt to NCB pursuant

to § 523(a)(6), alleging that Carmell knowingly and intentionally submitted materially false

financial documents about the condition of the companies as part of the Loan Application and

failed to provide NCB with the promised Rolling Collateral. In Counts IV and V, NCB sought

denial of discharge pursuant to §§ 727(a)(3) and 727(a)(5) based on Carmell's alleged material

omissions, submission of falsified documents, and failure to account or satisfactorily explain the

deficiency of assets to meet his liabilities owed to NCB.

JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court

pursuant to 28 U.S.C. § 157, referred here by District Court Operating Procedure 15(a) of the

United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C.

§ 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O).

DISCUSSION

## I.  APPLICABLE STANDARDS FOR SUFFICIENCY OF THE PLEADINGS

Carmell's motion to dismiss tests whether NCB's Amended Complaint meets the

pleading requirements of the Federal Rules of Civil Procedure and applicable precedent.  A

motion to dismiss under Rule 12(b)(6) Fed. R. Civ. P., made applicable by Rule 7012(b) Fed. R.

Bankr. P., tests the sufficiency of a complaint rather than the merits of the case. Gibson v. City of

7

Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). All well-pleaded allegations of the complaint are

assumed true and read in the light most favorable to the plaintiff. Levy v. Pappas, 510 F.3d 755,

764 (7th Cir. 2007). If the complaint contains allegations from which a trier of fact may

reasonably infer that proof will be available at trial, dismissal is improper. Sidney S. Arst Co. v.

Pipefitters Welfare Educ. Fund, 25 F.3d 417, 421 (7th Cir. 1994).

The Motion also tests whether certain counts of the Amended Complaint that now

specifically refer to certain statutory actions not referred to in the Original Complaint "relate

back" to the original filing so as not to be deemed untimely.

### A. Rule 8(a)(2) and Recent Rulings as to Pleading Requirements

Rule 8(a)(2) Fed. R. Civ. P., made applicable by Rule 7008 Fed. R. Bankr. P., generally

requires that the pleader provide "a short and plain statement of the claim showing that the

pleader is entitled to relief," giving the defendant "fair notice of what the . . . claim is and the

grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955,

167 L.Ed.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft

v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 570). A

complaint is plausible when "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

Twombly, 550 U.S. at 556). A plaintiff need not include detailed factual allegations, but "the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal

quotations omitted). Plausibility does not require probability, but does require something "more

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (citing

Twombly, 550 U.S. at 556). "[A] defendant should not be forced to undergo costly discovery

unless the complaint contains enough detail, factual or argumentative, to indicate that the

plaintiff has a substantial case." Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797,

802-03 (7th Cir. 2008).

Subsequent opinions from panels of the Seventh Circuit Court of Appeals suggest that

Twombly did not "signal[ ] an end to notice pleading in federal courts." Doss v. Clearwater Title

Co., 551 F.3d 634, 639 (7th Cir. 2008) (citing Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197,

167 L.Ed.2d 1081 (2007)); see also Bissessur v. Ind. Univ. Bd. of Trs., 581 F.3d 599, 603 (7th

Cir. 2009) ("Our system operates on a notice pleading standard; Twombly and its progeny do not

change this fact."); Smith v. Duffey, 576 F.3d 336, 339-40 (7th Cir. 2009) (suggesting that some

opinions have placed excessive meaning on Twombly). A complaint should be dismissed if "the

factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the

claim to which the defendant is entitled under Rule 8." St. John's United Church of Christ v. City

of Chi., 502 F.3d 616, 625 (7th Cir. 2007) (quoting Airborne Beepers & Video, Inc. v. AT & T

Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007)). A Seventh Circuit panel opinion recently

observed that, "[t]he task of applying Bell Atlantic to the different types of cases that come

before us continues. In each context, we must determine what allegations are necessary to show

that recovery is 'plausible.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008); see

also Wilson v. O'Brien, No. 07 C 3994, 2009 WL 2916849, at *2 (N.D. Ill. Sept. 2, 2009) ("The

court will apply the notice-pleading standard on a case-by-case basis to evaluate whether

recovery is plausible.").

9

### B. Rule 9(b): Pleading Allegations of Fraud with Particularity

The foregoing standards must be applied here to an Amended Complaint objecting to

discharge and the dischargeability of debt based, in part, on allegations of fraud. Allegations of

fraud must properly be pleaded in some detail in conformance to Rule 9(b) Fed. R. Civ. P., made

applicable by Rule 7009 Fed. R. Bankr. P. Borsellino v. Goldman Sachs Group, Inc., 477 F.3d

502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity." Id. (quoting Fed. R. Civ. P. 9(b)).

"The circumstances of fraud or mistake include the identity of the person who made the

misrepresentation, the time, place and content of the misrepresentation, and the method by which

the misrepresentation was communicated to the plaintiff." Windy City Metal Fabricators &

Supply, Inc. v. CIT Tech. Fin. Servs., 536 F.3d 663, 668 (7th Cir. 2008) (quotation omitted); see

also Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) (describing Rule

9(b)'s particularity requirement as the "who, what, where, when and how" of the alleged fraud).

This heightened pleading standard applies to all "averments of fraud," regardless of whether

those averments pertain to a "cause of action" for fraud. Borsellino, 477 F.3d at 507. Allegations

based on "information and belief" do not comply with the specificity requirement unless

accompanied by pleadings of asserted facts providing the basis of the belief. Interlease Aviation

Investors II (ALOHA) L.L.C. v. Vanguard Airlines, Inc., 254 F. Supp. 2d 1028, 1040 (N.D. Ill.

2003).

The particularity requirement of Rule 9(b) should be read in conjunction with Rule 8(a)'s

"short and plain statement" pleading requirement. Rezin v. Barr (In re Barr), 207 B.R. 168, 172

(Bankr. N.D. Ill. 1997). Thus, it is not necessary that a plaintiff plead each fraudulent detail, so

long as the circumstances constituting fraud have been set forth adequately. Id. (citing Midwest

Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992)). "[T]he who, what, when, and

where aspects of the fraud need not be related with exact details in the complaint as a journalist

would hope to relate them to general public." Zamora v. Jacobs (In re Jacobs), 403 B.R. 565,

573 (Bankr. N.D. Ill. 2009). That is, it is only necessary to set forth a basic outline of fraud in

order to alert the defendant of the purported fraud he is defending against. Barr, 207 B.R. at 173

(citing Vicom Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994)). "Malice,

intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.

Civ. P. 9(b). Moreover, a plaintiff is not required to plead facts as to which they lack access prior

to discovery. Barr, 207 B.R. at 172-73 (citing Katz v. Household Inter., Inc., 91 F.3d 1036, 1040

(7th Cir. 1996)).

### C. Rule 15(c) and the Relation Back Doctrine

The Debtor argues that Counts I, IV, V, and VII of the Amended Complaint do not "relate

back" through Rule 15(c) Fed. R. Civ. P., made applicable by Rule 7015 Fed. R. Bankr. P., to the

conduct and transactions alleged in the Original Complaint, and therefore were untimely filed

and are thereby barred under Rules 4004(a) and 4007(c) Fed. R. Bankr. P.[1] NCB disagrees and

---

[1] Bankruptcy Rules 4004(a) and 4007(c) bar the filing of objections to discharge pursuant to
§ 727 or to the dischargeability of debt pursuant to § 523(a) "60 days after the first date of the meeting of
creditors under § 341(a)." Fed. R. Bankr. P. 4004(a); Fed. R. Bankr. P. 4007(c). The same deadline
applies to adding new claims objecting to discharge and dischargeability of debt. Regis Tech. v. Oien (In
re Oien), 404 B.R. 311 (Bankr. N.D. Ill. 2009). In this case, the deadline to object to discharge or
dischargeability pursuant to §§ 727 or 523 was extended by Order to August 1, 2009. (See Order, Bankr.
Docket No. 20.) The Original Complaint was timely filed on July 31, 2009. The Amended Complaint
was filed on September 22, 2009 after the deadline for filing an objection to discharge and
dischargeability expired. Unless the pleaded amended counts are either the same as in the Original
Complaint, or "relate back" to allegations therein, they would be filed too late.

argues that the additional allegations in the Amended Complaint do relate back to the Original

Complaint.

"An amendment to a pleading relates back to the date of the original pleading when . . .

the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence

set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c).

Amendments pursuant to Rule 15(c) should be freely allowed in order to effectuate the general

policy favoring trial of cases on the merits. Hill v. Shelander, 924 F.2d 1370, 1376 (7th Cir.

1991).

"The criterion of relation back is whether the original complaint gave the defendant

enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been

surprised by the amplification of the allegations of the original complaint to the amended one."

Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 573 (7th Cir. 2006) (citations omitted). The

original pleading need only ". . . give the defendant fair notice of what the claim is and the

grounds upon which it rests." Morton Grove Pharms., Inc v. Nat'l Pediculosis Ass'n, Inc., 525 F.

Supp. 2d 1039, 1048 (N.D. Ill. 2007) (quoting Airborne Beepers & Video, Inc. v. AT & T

Mobility LLC, 499 F.3d 663, 667-68 (7th Cir. 2007)).  Statutory claims specified in the amended

complaint and explanatory detail need not have been alleged in the original complaint so as to

meet the "plausibility" standard under Ashcroft in order to relate back.  However, Rule 15(c)

does require that facts plead in the original complaint provided the defendant with sufficient

notice of the transactions asserted or which the newly specified theories of the amended

complaint are based.  "[N]otice to the opponent is clearly the critical element in the Rule 15(c)

determination."  Re/Max Props. Inc. v. Barnes (In re Barnes), 96 B.R. 833, 836 (Bankr. N.D. Ill.

12

1989) (citing Staren v. Am. Nat'l Bank & Trust Co. of Chi., 529 F.2d 1257, 1263 (7th Cir.

1976)).

There is no requirement that the original and amended complaints advance the same

substantive legal theory. In re Gerardo Leasing, Inc., 173 B.R. 379, 388 (Bankr. N.D. Ill. 1994)

(citing Donnelly v. Yellow Freight Sys., Inc., 874 F.2d 402, 410 (7th Cir. 1989), aff'd in part, 494

U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990)). Rather, the amended complaint should be

deemed timely if a sufficient factual nexus exists between the original and amended complaints

such that the original pleadings give fair notice of the factual situations from which the amended

pleadings arise. See Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir. 2001); Gerardo, 173 B.R.

at 388. A sufficient factual nexus exists where the amended complaint asserts a newly specified

claim "based on same core of facts advanced in the original." Newell v. Hanks, 283 F.3d 827,

834 (7th Cir. 2002). If the new counts have the same factual basis as the original count, then the

amendments arise "out of the same transaction" as the original pleading and thus relate back under

Rule 15(c). Gerardo, 173 B.R. at 388-89. If, however, an amendment states a new claim based on

a materially different set of facts than the original claim, the amendment does not relate back. Id.

at 389.

In this regard, opinions from the Seventh Circuit Court of Appeals have been clear in

pointing out that statutory provisions and elements of a cause need not be pleaded to comply with

the notice pleading requirements under Rule 8. See Christensen v. County of Boone, Ill., 483

F.3d 454, 459 (7th Cir. 2007) (liberal notice pleading of Rule 8(a) does not require an exhaustive

recitation of the facts or elements of a plaintiff's claim); Chapman v. Stricker, 81 F. App'x 77, 80

(7th Cir. 2003) ("A plaintiff need not plead all of the elements of his claims or all of the facts

necessary to support them."); <u>Shah v. Inter-Continental Hotel Chi. Operating Corp.</u>, 314 F.3d 278,

282 (7th Cir. 2002) ("The plaintiff is not required to plead facts or legal theories or cases or

statutes, but merely to describe his claim briefly and simply."); <u>Brokaw v. Mercer County</u>, 235

F.3d 1000, 1024 n.19 ("[N]otice pleading requires the plaintiff to allege just enough to put the

defendant on notice of facts providing a right to recovery and not to cite to the appropriate statute

creating that right.") (<u>citing</u> <u>Bartholet v. Reishauer A.G. (Zurich)</u>, 953 F.2d 1073, 1078 (7th Cir.

1992)). Therefore, lack of mention of legal or statutory theories in the original complaint does not

bar assertion of newly specified theories in the Amended Complaint.

## II.    DISCUSSION OF COUNTS

### Count I: § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money,

property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

. . . false pretenses, a false representation, or actual fraud, other than a statement respecting the

debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).  Generally, in order to

except from discharge a debt arising through false pretenses or false representations, the plaintiff

must establish that the debtor made a false representation, knowing it to be false (or with reckless

disregard for its truth), with intent to deceive, on which the plaintiff justifiably relied.  <u>Citibank</u>

<u>(S.D.), N.A. v. Michel</u>, 220 B.R. 603, 605 (N.D. Ill. 1998).  A false representation can be shown

through conduct and does not require a spoken or written statement.  <u>Bletnisky v. Jairath (In re</u>

<u>Jairath)</u>, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).  In other words, "[a] debtor's silence

regarding a material fact can constitute a false representation under § 523(a)(2)(A)."  <u>In re</u>

<u>Westfall</u>, 379 B.R. 798, 803 (Bankr. C.D. Ill. 2007).  A debtor's failure to disclose pertinent

14

information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression. Trizna & Lepri v. Malcolm (In re Malcolm), 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992).

The thrust of Count I is the assertion that Carmell made false representations to NCB in Term Note A concerning the ability of 18 Leasing and Eagle American to provide collateral for the loans which NCB justifiably relied on in providing the $1,850,000 loan to 18 Leasing and Eagle American. NCB alleges that Carmell solicited loans from NCB to obtain money and refinancing of debt owed to Associates First. NCB further alleges that at the time Carmell submitted Term Note A, he knew and failed to disclose to NCB that the Rolling Collateral was seized, missing, or in possession of the State of Georgia. Count I thereby alleges that Carmell fraudulently represented to NCB in Term Note A that Eagle American Leasing would be able to provide, among other things, the Rolling Collateral as security for the loans. Taken as true for the purposes of the motion to dismiss, these allegations are sufficiently pleaded to give notice of a plausible claim of fraud under § 523(a)(2)(A). NCB has supplied the necessary "who", "what", "when", "how", and "why" of the circumstances constituting alleged material omissions amounting to fraud.

Debtor admits that "the conduct complained of in Count I [of the Amended Complaint] relates to the transactions set out in the Original Complaint." (Motion to Dismiss ¶ 10.) However, the Debtor argues that Count I of NCB's Amended Complaint does not relate back to the Original Complaint pursuant to Rule 15(c) because it states a new cause of action based on additional facts different from those originally plead. Specifically, Defendant contends that for the first time in Count I of its Amended Complaint, NCB alleges that Carmell made false statements and

15

fraudulent representations to NCB in Term Loan Note A, and that Carmell knew but failed to disclose that the collateral was seized by the State of Georgia.

In the Original Complaint, NCB did not specify that pursuant to the Security Agreement, Term Note A was secured by all 18 Leasing's and Eagle American's tangible and intangible personal property, which included the Rolling Collateral. However, NCB did allege in the Original Complaint that the Credit Agreement contained materially false information as to the financial condition of United, 18 Leasing, and Eagle American and material omissions equating to fraud; that Term Note A was executed under the terms of the Credit Agreement; and that in reliance on financial information provided by Carmell and the terms of the Credit Agreement, Term Loan A Note, and the Unconditional Guaranty of Carmell, NCB agreed to disburse $1,850,000 to Associates First in order to settle the Georgia Litigation. Furthermore, Term Loan Note A was attached as an exhibit to the Original Complaint. Again construing the pleadings and inferences derived from them in a light most favorable to NCB, these allegations were enough to notify Carmell of a potential claim involving Carmell's representations contained in Term Loan Note A and the related Security Agreement. Amended Count I certainly arises out of the same loan transaction alleged in the Original Complaint and thus relates back to Original Complaint under Rule 15(c). See In re Gerardo Leasing, Inc., 173 B.R. 379, 388-89 (Bankr. N.D. Ill. 1994). Therefore, Debtor's Motion to Dismiss Count I will be denied.

### Count II: § 523(a)(2)(B)

Section 523(a)(2)(B) states in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services,

or an extension, renewal, or refinancing of credit, to the extent
obtained by . . . the use of a statement in writing . . .

>    (i) that is materially false;
>    (ii) respecting the debtor's or an insider's financial
>    condition;
>    (iii) on which the creditor to whom the debtor is liable for
>    such money, property, services, or credit reasonably relied;
>    and
>    (iv) that the debtor caused to be made or published with the
>    intent to deceive.

11 U.S.C. § 523(a)(2)(B). In order to prevail on a § 523(a)(2)(B) claim, the creditor must prove

that: (1) the debtor made a statement in writing; (2) the statement was materially false; (3) the

statement concerned the debtor's financial condition; (4) the debtor intended to deceive the

creditor; and (5) the creditor reasonably relied on the statement. Nite Lite Signs & Balloons, Inc.

v. Philopulos (In re Philopulos), 313 B.R. 271, 280 (Bankr. N.D. Ill. 2004) (citing In re Sheridan,

57 F.3d 627, 633 (7th Cir. 1995)).

In Count II of the Amended Complaint, NCB alleges that 18 Leasing and Eagle American

were "insiders"[2] of Carmell and that Carmell submitted financial documents containing material

false information with respect to the financial condition of United, 18 Leasing, and Eagle

American to NCB in order to procure loans from NCB. Specifically, NCB alleges that the

Financial Documents provided false valuations for the companies and did not accurately reflect

that all of the Rolling Collateral pledged in the Settlement Agreement either had been seized by

the State of Georgia or was inoperable and in disrepair. NCB alleges that it relied on these

Financial Documents in providing the loan to 18 Leasing and Eagle American. The Amended

---

[2] An "insider" includes a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A).

Complaint further alleges that Carmell knew the documents were false when he submitted the documents to NCB and that he submitted the documents with the intent to deceive NCB and induce NCB to provide the loan. NCB has plead all the elements of a § 523(a)(2)(B) claim. Taken as true for the purposes of this motion, these allegations are sufficiently pleaded to give notice of a plausible claim under § 523(a)(2)(B). Therefore, Debtor's Motion to Dismiss Count II will be denied.

### Count III: § 523(a)(6)

"A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order for a debt to be found nondischargeable under § 523(a)(6), a plaintiff must prove three elements: (1) that the debtor intended to cause and caused an injury; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious. See id. For purposes of § 523(a)(6), "willful" means actual intent to cause injury, not merely the commission of an intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). To satisfy the elements under § 523(a)(6), creditors must plead and prove that the debtor actually intended to harm them and not merely that the debtor acted intentionally and they were thus harmed. Id. at 61-62. In other words, the debtors must have intended the harmful consequences of their acts. Id. An act is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse." In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994). A debtor does not have to act with ill will to the creditor for the conduct to be malicious, and whether a debtor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact. Id.

18

Count III of the Amended Complaint alleges that Carmell knew that pursuant to the

Security Agreements and Term Note A, the $185,000,00 loan was secured by the Rolling

Collateral. Count III specifically alleges that "Carmell willfully and intentionally failed to disclose

that 18 Leasing and Eagle American would have no means of providing the Rolling Collateral to

[NCB] and [knew][3] that [NCB] would incur damages in the amount of $1,850,000." (Amended

Complaint ¶ 55.) Taken as true for the purposes of this motion, these allegations are enough to

state a plausible claim that Carmell intended to injure NCB pursuant to § 523(a)(6). See Fed. R.

Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally."). Therefore, Debtor's Motion to Dismiss Count III will be denied.

### Count IV: § 727(a)(3)

A debtor's discharge may be denied if "the debtor has concealed, destroyed, mutilated,

falsified, or failed to keep or preserve any record information, including books, documents,

records, and papers, from which the debtor's financial condition or business transactions might be

ascertained." 11 U.S.C. § 727(a)(3). "Section 727(a)(3) requires the debtor to produce records

which provide creditors or a chapter 7 trustee 'with enough information to ascertain the debtor's

financial condition and track his financial dealings with substantial completeness and accuracy for

a reasonable period past to present.'" Peterson v. Berg (In re Berg), 387 B.R. 524, 572 (Bankr.

N.D. Ill. 2008) (quoting In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996)). A debtor's records do

not have to be perfect, but "courts and creditors should not be required to speculate as to the

---

[3] NCB argues that the word "knew" was unintentionally omitted prior to "New Century Bank" and that the meaning can be reasonably inferred from the statement. (Docket No. 29, NCB's Response to Debtor's Motion to Dismiss at 10.)

19

financial history or condition of the debtor, nor should they be compelled to reconstruct the

debtor's affairs." Id. (quoting In re Juzwiak, 89 F.3d at 428).

Count IV of the Amended Complaint alleges that Carmell has concealed or failed to keep

books and records that accurately reflect "the debtor's financial condition or business

transactions" pursuant to § 727(a)(3). NCB alleges that although Carmell has testified that he did

not possess any books and records for 18 Leasing, Eagle American, or United, Carmell submitted

financial documents including among other things, "a bank packet with all pertinent financial

information," a "financial recap and explanation of 2007," balance sheets for 2006 and 2007, and

equipment appraisals to NCB via electronic mail. (Amended Complaint ¶¶ 58-59.) NCB thereby

alleges that, contrary to his testimony, Carmell has either concealed or failed to keep records that

accurately set forth adequate financial conditions of companies that he controls, and that these

records could be used to ascertain Carmell's business transactions.  Taken as true for the purpose

of this motion, Count VI properly alleges a plausible claim under § 727(a)(3).

In the Motion to Dismiss, the Debtor argues that Count IV of NCB's Amended Complaint

does not relate back to the Original Complaint pursuant to Rule 15(c).  He contends that for the

first time in the Amended Complaint NCB alleges that Carmell concealed or failed to keep

records and also for the first time makes allegations related to Carmell's testimony at the § 341

Meeting.

However, the Original Complaint alleged that Carmell was an "insider" of Eagle American

and 18 Leasing and responsible for submission of financial information to NCB.  In addition,

NCB made allegations in the Original Complaint regarding Carmell's testimony at the § 341

Meeting.  It alleged therein that during that Meeting, Carmell testified that his wife and son

20

notified NCB of certain fraud associated with 18 Leasing and Eagle American's application to

NCB, and that Carmell then admitted that he submitted the application to NCB. (Original

Complaint ¶¶ 20-21). A copy of the transcript of the § 341 Meeting was attached as an exhibit to

the Original Complaint. (Original Complaint, Ex. C.) Construing the pleadings and inferences

derived from them in a light most favorable to NCB, these allegations were enough to notify

Carmell of a possible claim under § 727(a)(3) based on Carmell's own testimony at the § 341

meeting and his submission of financial information to NCB. This conduct was set forth in

allegations of the Original Complaint, and therefore Count IV of the Amended Complaint relates

back to the filing of that pleading under Rule 15(c). Therefore, Debtor's Motion to Dismiss

Count IV will be denied.

### Count V: § 727(a)(4)(A)

A debtor's discharge may be denied if the debtor "knowingly and fraudulently, in

connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). For

purposes of § 727(a)(4)(A), a debtor's petition, schedules, statement of financial affairs,

statements made at a § 341 Meeting, and testimony at a Rule 2004 examination all constitute

statements that are made under oath. John Deere Co. v. Broholm (In re Broholm), 310 B.R 864,

879 (Bankr. N.D. Ill. 2004). Since § 727(a)(4)(A) requires that debtor acted fraudulently,

pleading a claim under this section is subject to Rule 9(b) Fed. R. Civ. P., made applicable by

Rule 7009 Fed. R. Bankr. P., which requires allegations of fraud to be pleaded with particularity.

Nieman v. Irmen (In re Irmen), 379 B.R. 299, 310 (Bankr. N.D. Ill. 2007).

NCB makes several allegations in the Amended Complaint that Carmell submitted to

NCB or was in possession of financial documents relating to 18 Leasing and Eagle American.

Therefore, in Count V, NCB alleges that Carmell made false oaths when he stated in his § 341

Meeting testimony and in an affidavit filed in this case (Amended Complaint, Ex. 1 "Carmell

Affidavit") that he did not possess or submit any financial statements to NCB and that he was not

involved in the preparation of maintenance of financial records for 18 Leasing and Eagle

American. Taken as true for the purposes of this motion, these allegations sufficiently allege a

plausible cause of action under § 727(a)(4)(A).

In his Motion to Dismiss, Debtor argues that in Count V, NCB alleges for the first time

that Carmell knowingly made fraudulent statements in the Carmell Affidavit and in his testimony

at the § 341 Meeting. The Debtor argues that these allegations are unrelated to any of the

allegations made in the Original Complaint and therefore do not relate back to the Original

Complaint under Rule 15(c). However, the Original Complaint alleged that Carmell testified at

the § 341 Meeting regarding the submission of documents to NCB. The Original Complaint

alleged that Carmell was responsible for and in possession of financial documents for 18 Leasing

and Eagle American. Construing the pleadings and inferences derived from them in the light most

favorable to NCB, these allegations were enough to notify Carmell of a claim under

§ 727(a)(4)(A) based on Carmell's asserted involvement in the submission of financial documents

on behalf of 18 American and Eagle American to NCB. This conduct was set forth in allegations

of the Original Complaint, and therefore Count V relates back to the Original Complaint under

Rule 15(c). Accordingly, Debtor's Motion to Dismiss Count V will be denied.

**Count VI: § 727(a)(5)**

Section 727(a)(5) provides that "the court shall grant the debtor a discharge, unless . . . the

debtor has failed to explain satisfactorily, before determination of denial of discharge under this

22

paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C.

§ 727(a)(5). An objection to discharge under this section involves two stages of proof. In re

Bostrom, 286 B.R. 352, 364 (Bankr. N.D. Ill. 2002). The plaintiff must first plead that the debtor

owned specified substantial and identifiable assets at one time and that those assets are no longer

available for the creditors. Id. If the plaintiff meets that burden, the debtor must then provide a

satisfactory explanation for the loss. Id.

In Count VI, NCB alleges that Carmell, as President of Eagle Logistics and member of 18

Leasing and Eagle American, failed to explain satisfactorily the loss of the Rolling Collateral and

the deficiency of assets to meet his personal liability of $1,850,000 to NCB. It is possible to read

this Count as alleging that Carmell himself had some ownership interest in the companies and

thereby held an indirect interest in the Rolling Collateral such that § 727(a)(5) would apply. NCB

also alleges that "many of the trucks had been stripped of their parts, severely damaged or seized

by the State of Georgia due to United's failure to pay certain Georgia state taxes." (Amended

Complaint ¶ 12.) This allegation itself provides a partial explanation for the loss of the Rolling

Collateral, and NCB might have plead itself out of court had it not also alleged that "many of the

trucks were missing or could not be located." (Id.) Neither party has explained the loss of the

missing trucks. Taken as true for the purposes of this motion, these allegations sufficiently allege

a plausible cause of action under § 727(a)(4)(A). Therefore, the Motion to Dismiss Count VI will

be denied.

**Count VII: § 727(a)(7)**

Section 727(a)(7) states in relevant part:

23

> The court shall grant the debtor a discharge, unless . . . the debtor
> has committed any act specified in paragraph (2), (3), (4), (5), or (6)
> of this subsection, on or within one year before the date of the filing
> of the petition, or during the case, in connection with another case,
> under this title or under the Bankruptcy Act, concerning an insider.

11 U.S.C. § 727(a)(7). In its Amended Complaint, NCB alleges that Carmell violated § 727 in

connection with the involuntary bankruptcies filed against 18 Leasing and Eagle American,

companies that are insiders of Carmell. First, NCB alleges that Carmell failed to keep books and

records from which those companies' financial condition could be ascertained, which is grounds

for an objection to discharge under § 727(a)(3). Second, NCB alleges that Carmell knowingly and

fraudulently stated under oath that he never submitted financial information or documents to

NCB, which is grounds for an objection to discharge under § 727(a)(4). The facts underlying

those two objections are the same as those underlying Counts IV and V of the Amended

Complaint. As to those two objections, Count VII states a sufficient claim and relates back to the

Original Complaint for the same reasons that Counts IV and V do. Therefore, Carmell's Motion

to Dismiss Count VII will be denied.

NCB also alleges in Count VII that Carmell failed to obey a court order in the insiders'

bankruptcy cases, which is grounds for an objection to discharge under § 727(a)(6). Specifically,

NCB alleges that Carmell failed to file the schedules, statements, and other required documents in

those cases by the date he was ordered to do so. Taken as true for the purposes of Carmell's

Motion to Dismiss, these allegations do set forth a plausible claim for relief. However, NCB's

Original Complaint contained no allegations that might constitute the same conduct, transaction,

or occurrence as Carmell's alleged failure to obey the court order. There is no mention in that

Complaint whatsoever of any bankruptcy case by or against 18 Leasing or Eagle American.

24

Therefore, this claim does not relate back to the Original Complaint and is untimely. Paragraph 90 of the Amended Complaint and the reference in paragraph 91 to § 727(b)(6) shall be stricken.  To the extent Count VII is intended to include an action under § 727(a)(6) the same is dismissed.

CONCLUSION

For foregoing reasons, Debtor's Motion to Dismiss will be denied by separate order.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of January 2010.